Case number 22-3070, United States of America v. Robert Keith Packer, of Valence. Mr. Kirsch, for the of Valence, Mr. Hovell for the appellee. Good morning, counsel. Mr. Kirsch, please proceed when you're ready. Good morning. May I please support Stephen Kirsch on behalf of Robert Packer? And I'd like to start out by saying that I fully appreciate the posture of the case. Mr. Packer has served his sentence that was imposed by Judge Nichols, and there was no supervisor released as part of the sentence that was imposed on him. There is, it does remain, however, a collateral consequence, which makes, means cases not. The collateral consequence was the imposition of, whether we call it a fine or whether we call it restitution, that there was a monetary component to the sentence that was instituted or that was made part of the sentence. And we go back to the trial record. Can I ask the restitution, that was the restitution, $500 restitution? Yes. Well, that restitution is paying back sort of the victim, the damage caused. And that was due to his presence and participation at the Capitol, which wouldn't change. What evidence is there that that turned at all on the length of his sentence? Well, he would have had the same $500 restitution even if he'd gotten, as you had, as Councilman Lowe had asked for, no, no sentence, no prison sentence at all. The amount of the restitution is discretionary, not a mandatory amount. The only mandatory assessment was the $10 assessment. So Judge Nichols had discretion to give a different amount of restitution. And I understand that it was part of the plea agreement that he agreed to restitution in the amount of $500. However, that was agreed to before Mr. Packer was made aware that this was an illegal sentence in violation of his First Amendment rights. So even though it was before the sentencing hearing it. Yes. And the restitution is, does that go to the architect of the Capitol or where does that money go? It goes to the architect of the Capitol. For damage caused by his presence there. Yes. So it has nothing to do with the length of his sentence. It's not the length of the sentence. But it still is part of the imposition of the sentence. And I would emphasize to the court that where a trial court imposes restitution, there's a whole procedure that's outlined in the United States Code. It's 18 United States Code 3664, where there's before a sentence is imposed or restitution is imposed, there are requirements that the government has to introduce evidence. The defendant has to introduce related to his indigency or his assets. And there has to be some sort of way to value the loss for the restitution because it is compensatory. But as the Supreme Court has said, it's also punitive. So there's two parts to it. Is any is one of those factors the length of the sentence imposed in calculating restitution? Does the length of the sentence? No, no. The length of the sentence does not matter in terms of the imposition of the sentence. So we would submit to the court that. But have you considered sentencing guidelines, too, that to the extent that you have a sentence of a certain length later on, it could impose certain amounts of points, whether it's one, two, or three, because you would have now had that prior sentence that could then make you have a higher guideline sentence the next time. Well, that's correct. And it's but as Judge Nichols acknowledged, everyone agreed, sentencing guidelines in this case were not an issue because it's a class. Yeah, I understand that. Not for here. But I'm saying the fact of having a conviction and then the sentence for another period later, then this becomes on the record and is a consideration for a higher sentencing guideline calculation. Yes, it does. I mean, it follows Mr. Packer down the road if he's ever convicted in the federal court. Certainly that would show up as part of his. But are you relying on that to to counter mootness, that potential consequence? Are you relying on that? I mean, when you started with the restitution. Right. Which I understand. And on this one is the prospect that someone might commit another offense, something that we take into account, deciding whether a case is moot because the sentence has been served. Or do we not factor in the prospect that someone would commit another offense, in which case there would be sentencing repercussions down the line? Yes. Well, a primary argument is that the collateral consequence, number one, is the fact that there's restitution and it's a discretionary amount. But in response to Judge Child's question, I agree that this is something that should Mr. Packer again come before a federal court. The sentencing on another matter, this will be a part of his sentencing. It will. It will be. It could be. I guess all I'm asking is, are you relying on that? That second part of it in arguing against mootness? Or are you only relying on the restitutionary award of $500? We're incorporating both. Are you relying on the second part, too? So so your read of mootness principles is that we do take into account the possibility that the defendant might commit another offense, deciding whether the fact that the sentence is passed makes the case moot? Well, there is a potential. That's correct. I mean, there is a possibility. There's a potential, but it's not. I would submit that the restitution order is definite. We know that there is an order of repayment and that has not yet been satisfied. So to this day, whether we call it restitution or we call it a fine, it's still a requirement imposed on Mr. Packer. And I also know for the court that reading the trial record, it's very ambiguous what Judge Nichols was saying. I understand he mentioned restitution at the sentencing hearing. But if you go back in the plea agreement itself, he talks very specifically on plea agreement, talks very specifically about a fine and then talks generally about restitution. And Judge Nichols also said in his in his sentencing elocution to the defendant, he said, well, I've imposed fines as low as $500. So clearly the notion of a fine was on his mind. And I believe that the record demonstrates that he conflated it. But we also take the position that really doesn't matter because the imposition of a monetary sanction is an adequate collateral consequence. Such that this case is not moved and getting beyond the procedure and getting into the substance. There's no question, no one's disputing that the T-shirt bearing the words Camp Auschwitz was utterly offensive and it was utterly offensive. But it is Mr. Packer still entitled to protect the First Amendment protections. And even though Judge Nichols sentenced Mr. Packer within the guidelines, he still had discretion. Now, Mr. Packer was sentenced to a period of incarceration of 75 days. He could have given him a lesser sentence or he could have given him probation. What's your argument as to the appeal waiver? Because that was raised by the government in its brief and then we didn't get a response from you about the appeal waiver. It's not waived because our argument is that the sentence was illegal because it violated his First Amendment rights. Is that your only reason? And I ask that because any plea and plea agreement should be knowing voluntarily and intelligently waived. And here, a plea agreement in and of itself doesn't get us, you know, not necessarily to rely only upon that. But you're only going to rely upon the plea colloquy by the judge. But there was no transcript, you know, attached here. Right, but it's, I mean, our position is that when they went in for the plea and they went in and they submitted the paperwork, everyone assumed that this was going to be a constitutionally permissible plea. And it's after the plea is entered that the government files its very lengthy sentencing memorandum and highly emphasizes the T-shirt multiple times, talking about the Camp Auschwitz T-shirt. And then at the sentencing, Judge Nichols made very specific references. Isn't it in the nature of an appeal waiver that it comes before sentencing that you don't know whether there's going to be a legal problem that arises in sentencing? And everybody, everybody understands that. But part of the bargain is, even though we don't know what the legal problem is that might arise, waiving the ability to challenge that on appeal. I agree, Your Honor, that this is something that you expect going into a plea, but you don't expect that the judge is going to violate the constitutional right. So an appeal waiver is only good if the plea itself and the allocutions and the judge's sentence are legal. When they're illegal, then the plea waiver no longer is valid. So if you thought that Judge Nichols, that the district court misapplied the guidelines, we wouldn't know that at the time that the appeal waiver was entered into. But then it comes to pass during the sentencing hearing that there's a misapplication of the guidelines. Would you be arguing, well, nobody would have anticipated that there would have been a misapplication of the guidelines. And therefore, appeal waiver doesn't apply because everybody assumed that it would be done strictly in accordance with law, including the statute, including the guidelines. I would argue that and that specifically is permissible. And that's in virtually every plea in the district court is that if the judge goes beyond the guidelines, it doesn't follow the guidelines or doesn't give a good reason going beyond the guidelines that is appealable. And but here when you and again, you did not attach the transcript, but here we would be looking to the plea colloquy to understand that even if comments are made earlier or there's some reference to the T-shirt, it's at the time of sentencing when the judge kind of goes over the factors as to how they got to that particular sentence. Was that a consideration with respect to the T-shirt? Yes, and we reference that in the brief. I'm going to make that specific. No, but what I'm talking about, you can have comments earlier on. You could have it in writing. You could have it orally at the plea colloquy. But when you get to the point of actually sentencing and the judge is providing their reasoning and their rationale, and there is no mention of the T-shirt at that time, would that make a difference? Well, it would make a difference. But in this case, at the sentencing hearing, when the judge specifically referenced the 3553 factors, went through the 3553 factors. And but then he went into the T-shirt. And he assigned a nefarious intent to the T-shirt. And he said, it's less for us to infer what the T-shirt means. And you would suggest that that was occurring right at the time of the sentence as part of the factor. Yes. And the best example I could think of. I mean, is that if Mr. Packer had been wearing a T-shirt that says, I support the First Amendment. If the words on the T-shirt were that, it would not have been a reference in the sentencing memorandum to those words. And now it would not have been a reference by Judge Nichols in his 20 imposed sentence to those words. It was strictly because it said Camp Auschwitz on it. And on the back, there were other offensive words. And he was, there's no evidence in the record that that T-shirt was being worn to incite the crowd, incite the riot, to advance Nazi hero. There's absolutely nothing in the record, which in the cases relied upon by the United States, those were factors where the court upheld using the offensive language as part of the sentence. Mr. Packer, there's nothing in the record to suggest any intent on his part. And the only reference in the record is that he was interviewed after he was arrested and he was asked, why were you wearing that offensive T-shirt? And his answer was, because it was cold out. Are you taking the position that the what you characterize as understandably characterized an offensive T-shirt, that that offensive T-shirt can't be taken into account at all, period, for sentencing purposes? No, I'm sorry. Or are you taking the position that the district court didn't explain how it was taking it into account? And there may be some valid reasons to take it into account, but we don't know if it was for a valid reason or invalid reason, because part of what you're saying makes it sound like you're suggesting that that fact can't be taken into account at all for sentencing, period. Appreciate the question. If the T-shirt, if the offensive language on the T-shirt related to future dangerousness, then under precedent, yes, it could be taken into account. There's nothing here to suggest it could be used, could have been used for future dangerousness because there was nothing in the record to support that. If the record showed that it was used to incite others to act in a certain way, then it could be used. So generally, there may be ways that it could have been relevant, but in this specific context, there was absolutely nothing in this record, nothing about the actions of Mr. Packer to support using that T-shirt in any way. And again, as Nichol says, he said he inferred some type of intent from it, and that we would submit as violated Mr. Packer's amendment rights. What if the sweatshirt said stop the count? I'm sorry. What if the sweatshirt said stop the count? Would that be taken into, would that be considered in sentencing? It may have been because that's what the purpose of the rally was. But this was, this was. That's still First Amendment speech. But if it's used to incite action, and again, we need more facts to put it into context, it might be something that's useful. Another example I would use is to go back to Charlottesville in 2017, where the people are marching and they're chanting, the Jews will not replace us. If he'd been wearing a camp, if he'd been wearing a Camp Auschwitz T-shirt in that context, there may have been something, that may have been a factor that a judge could have used at a sentencing hearing. But there's nothing in this record to come close to that, to support that. There is, and again, the only reference is he said he was cold. So there's nothing to show that he himself is a Nazi sympathizer. There's nothing to suggest that he was promoting Nazi ideology or anything else. He's just wearing a T-shirt with offensive words. And Ruth Smith, that's perfect. But should, I mean, generally you would be providing the transcript under our appellate rules. Should we then on our own look at the transcript so that we can make an assessment? Yes, fair enough. Can I just ask one more question about the sentencing, the appeal waiver? So just so I'm understanding your argument. I know that the appeal waiver provisions often have a carve out for sentences above the statutory maximum. So I'm not talking about a misapplication of the guidelines that would take you above the statutory maximum. I'm just saying that there's a guideline factor that is applied by the district court in a way that doesn't seem consistent with the guidelines. That there's a legal claim that that factor actually shouldn't have been applied in the same way. It doesn't come into play. Are you saying that the appeal waiver doesn't cover that kind of claim, too, in the same way that it doesn't cover the kind of claim that you're making now? Or are you drawing a distinction with the type of claim you're making now? I'm drawing a distinction because this is a violation of a constitutional right. So you're saying constitutional claims are in a different category? Well, yeah, in this category, yes, constitutional. For waiver purposes, the appeal waivers don't cover a constitutional claim. That would be our position, yes. What is your particular relief that you ask for in this regard? Because it's already served its sentence. Well, we would ask for resentencing, to remand the case for resentencing, and for Judge Nichols to provide further explanation for the reasons, and the only remaining collateral consequences to find for reasons that do not pertain to the T-shirt. And again, understand that this was agreed upon, but the judge doesn't have to follow that. In any agreed-upon plea, trial Judge Levin C1C says you don't have to follow. Judges typically will, but they do make findings. But in this case, those findings were not made, and the judge put it in— Did he reference the sweatshirt at any time when he was discussing the amount of restitution ordered? No, but he did— You have the quotes about—for the length of the sentence? Yes. But not for the restitution, which was agreed upon? No, and he only briefly mentioned— That was as low as he's ever gone before, anyhow. That's correct. Well, yes, that—well, he said that's as low as he's ever gone in the context of a fine. That position, it doesn't really matter, fine or restitution. But you don't—whether it's called fine or restitution, it's the same for you? In this context, yes. Make sure my colleagues don't have additional questions for you this time. We'll give you a little bit of time for— Thank you very much. Thank you. Counsel, Mr. Hubel. May it please the Court, Mark Hubel for the United States. This appeal should be dismissed as moot. Hacker challenges only the length of his prison sentence. He's already served that sentence, and he was released on December 30th. To the extent that he is now claiming there are continuing collateral consequences associated with the $500 restitution, that restitution, he agreed to pay it. It has nothing to do with the length of the sentence. Did he raise restitution as a collateral consequence in his brief? No, I don't believe he addressed—I'm sorry, mootness at all in his brief, and he did not file that. A reply brief responding to our mootness arguments. I direct the Court just to— But he pretty clearly argued that he thought the length of the sentence imposed was impacted by the sweatshirt, impermissibly affected by the sweatshirt he was wearing, but he did not do that with respect to restitution. That's correct, Your Honor. I just direct the Court's attention to page 174 of the appendix, which is the district court's statement that Packer agreed to pay the $500 restitution. I think the Court may have just mistook him. But I'm not sure I follow the agreement part of it. You layered in two things. One is that there was an agreement, and the second is that the length of the sentence didn't vary based on it. Those two things don't necessarily go together. And if the agreement part of it—let's suppose restitution does turn on the length of the sentence, and the fact that he agrees to it as part of a plea agreement, would that mean that it doesn't get taken into account for mootness purposes? Because then if you could send it back, then the restitutionary award would potentially be different, even though he agreed to it. That's right. I'm tempted to say I think he saw a high hurdle on mootness given the agreement, The key factor here, Your Honor, is that the length of his prison sentence had nothing to do with the restitution. So the argument today that notionally, if the case was remanded for resentencing, on the length of the sentence that the restitution would alter is just completely speculative. Remand for a resentencing would be an empty exercise. So, you know, we would urge this court to dismiss this as moot. Let me just quickly address his point about future sentencing and that his sentence might be enhanced in the future. The Supreme Court, Spencer v. Chemna, was pretty clear on this, and we cited Spencer in our brief. A similar claim was likewise considered and rejected in Lane v. Williams because it was contingent upon respondents violating the law, getting caught, and being convicted. Respondents themselves are able and indeed required by law to prevent such a possibility from occurring. The speculative prospect that Packer might re-offend and be subject to additional sentencing, that's within his control. That's not sufficient to maintain standing where his release from prison has already mooted his challenge to the sentence. Do you know if Virginia has sentencing guidelines or whatever its sentencing system is? If he were convicted again under Virginia law, which is what his criminal history is, whether that would factor in this sentence? I don't, Your Honor. I apologize. There's some argument there that he's not in control of his behavior when it comes to alcoholism, so it's not so much the choice making that you just referenced in Spencer. Right. Again, I'm not familiar with Virginia law, but I don't think it matters, Your Honor. As a legal matter, the prospect of having your sentence enhanced in a future proceeding, that's insufficient to maintain standing to a sentencing challenge. Back to the restitution one more time. Sorry, I know you want to move on. You said it's speculative, but the legal factors that courts consider in setting the amount of restitution, the facts and the legal principles that they consider, does length of sentence, at least for misdemeanors like this, factor in at all? Your Honor, I have to apologize. I'm not sure I'm prepared to answer that, in part because I'm hearing for the first time today the restitution response to our mootness argument, because again, Packard did not file a reply brief. I note here that on this record, there is no connection between the length of the sentence that he received and the restitution he paid. The district court here carefully went through all the sentencing factors, considered the nature of his conduct, background. The restitution, because he agreed to it, was sort of imposed at the end without much discussion. It wasn't part of the discussion of the factors. And he had agreed in advance in the appeal, sorry, in his plea agreement to the $500 for restitution. You know, unfortunately, off the top of my head, I don't remember. I think that's what Mr. Keir said earlier. But, you know, certainly at the time… He hadn't agreed to the amount of sentence, the length of the sentence in the agreement. He had not. But, you know, he did obviously appeal his right to… He did waive his right to appeal the sentence unless it was over the statutory maximum. Everybody's agreed here that the sentence he received is below the six-month statutory maximum. So, you know, even if the court were to disagree with us on mootness, we'd ask this court to follow its ordinary course and enforce the appeal waiver. I know Judge Childs, you'd asked about the plea transcript. We did not have that at the time that we filed our opposition brief, but we filed a copy of the plea transcript last week. And the district court did review the terms of the appeal waiver with Packer, did accurately state you're waiving your right to appeal unless I give you a sentence above the statutory maximum, which did not occur here. So this is not a case like Kauffman, which Packer cited in his opening brief, in which the district court essentially rewrote the terms of the appeal waiver on the spot during the plea colloquy. The district court accurately repeated the terms of the appeal waiver in the plea agreement. Those terms should be honored here. We do have decisions on appeal waivers that say that there are certain situations in which we won't enforce an appeal waiver. And one of them is when the sentencing court, what we said, is rest the sentence on a constitutionally impermissible factor, such as the defendant's race or religion. That's correct, Your Honor. The court did say that with the Gillen case, and we cited that in our brief. That did not occur here. Isn't that his claim, that the sentence is based on a constitutionally impermissible factor? That is his claim, Your Honor, and I'm happy to address it. That did not occur here. The sweatshirt was, you wore it during his participation in the mob. That's on the merits of the claim, and I want to hear your argument on the merits, but I guess what I'm asking is in terms of the waiver. If that's a basis to not enforce a waiver, then the enforceability waiver doesn't turn on whether the claim is valid or not at the end of the day. Right. And I think what an effect does is it narrows the scope of the permissible claim he could bring. So, for instance, Chief Judiciary Lawson, you would ask Mr. Kirsch whether he was appealing, whether the district court gave a sort of sufficiently detailed explanation for his reasons for relying on the sweatshirt in part. That type of claim would be barred by the appeal waiver, clearly going to sort of a procedural reasonableness of imposing the sentence and relying on that. In fact, so it does narrow the scope of the claim. And, you know, again, to reach through the appeal waiver, to reach through movements, too, which we can't have done. But Mr. Packer really has to argue that he would have to be a very blatant person in violation. I mean, Packer was wearing it's at Camp Auschwitz, staff at Camp Auschwitz by identification with death camp guards at the scene of the rally. You know, to the extent that Packer is now arguing that a stop the seal sign would be something permissible to consider because it shows your purpose or intent in joining the riot. Certainly, Camp Auschwitz sweatshirt demonstrates or at least raises an inference of purpose for intent motive. How does it connect to this? I mean, he made the distinction between the Charlottesville march and this one. So that's what I didn't see from the district court. I'm not naturally getting is what is the connection? So I like to quote your honor from the government sentencing allocation where we did draw this connection. Pages 148 to 49 of the appendix was in. And Mr. Packer was everywhere that violence happened, except for the rotunda stores. Your honor, he was everywhere else. He broadcast his intention for joining the riot. He wanted to support the subversion of a Republican, keep a dictatorial ruler in place by force and violence. And his words on his clothing showed you his intent. I know, too. So his intent was in order to participate in the mob. The inference that the shirt raises is that in participating in the mob attack in the capital, he was seeking to participate in the violent overthrow of our democracy, our republic. You know, he's not in in in his sentencing memorandum. He compared himself to Forrest Gump, sort of a passive, peaceful observer. And the shirt, the shirt truly belies that characterization was highly relevant. And I know, too, addition to his purpose and motive. So the point was this to connect to like a white supremacist desire to overthrow the government. Is that the connection between the Camp Auschwitz? And I would get like the stop the steal or, you know, stop government can't be trusted or something like that. But this requires a little more. Infrared for a stretch here to get the connection, at least in my eyes, a disgusting and appalling sweatshirt. But we have to be really, really careful in this country about when First Amendment protected activities and be a basis for imprisonment. That's something very important in this country. And and sometimes again, certainly if it really is right in the heart of the matter, let's let's let's take over. The capital shirt would be perfectly relevant. This one is, you've got to admit, it's a few steps away. No, and I want to be clear, too, that the government is. Is being is being careful here and is being sensitive to these First Amendment concerns. I mean, I do think that when Mr. Kerr said that the government really emphasized this certain sentencing, well, that's just inaccurate. I mean, we did not foreground the shirt, except to the extent that we said it was distinctive, which enables. And we included a number of pictures and screenshots from video to show Packer going to the Capitol. And we also noted that his answers to the FBI about why he wearing it was wearing it. He was cold, whereas the answer is that that indicates he was not completely forthcoming with the FBI during his debrief. And that does go to the extent of remorse. So we did not heavily emphasize this, despite what Mr. Kerr says in our memory. But if it's relevant, then there's no reason not to emphasize it. That's what I'm not right. I'm just trying to get the connection as to relevance, because this one seems to me harder to link up and a lot of other things one can imagine. And again, the First Amendment is it's really, really important that we not imprison people for speech unless their speech is criminal. Understood. I would I would argue that the inference does. Does there is a clear inference linking a Camp Auschwitz sweatshirt, an SS T-shirt that's worn underneath the two. Right. And I know, too, there are other legitimate sentencing purposes here. That shirt conveys a threat. It's intimidating. It expresses essentially that this person, that Packer, you know, sympathizes with, with, you know, the people who killed millions of Jews and others in the Holocaust. And, you know, it's also as as a future dangerousness. I believe acknowledge that we cited to the United States the Schmidt, a recent Seventh Circuit case in which, you know, unlike in this case where there was a clear connection between the crime and the expression or the belief of Nazism in Schmidt, it was a felon in possession case where there was not a connection between the crime, a clear connection between the crime and the Nazi beliefs. But the Seventh Circuit still upheld the district court's reliance on it based on the threat of future dangerousness. In the Gilling case, it mentions a waiver does not shield from review a sentence color of the alleged to rest upon a constitutionally impermissible fact. So I want you to focus on the work colorably. Right. We would disagree that the Packer has raised a colorable. First of all, this is a, you know, this is not a situation like the Lemon case, this court's precedent in which there were no facts connecting. You know, in that case, it was a it was a check cashing case, a bad check cashing case. And there were no facts connecting the defendants association with the black Hebrews group and the crime here. There is a clear connection between the crime and the shirt. He was wearing the shirt during the crime and the district court was permitted to draw reasonable inferences that on that from that. The First Amendment did not stand in the way from the district. But, you know, in the end, I'd return to the mootness plate. You know, there is no effective remedy here. He's already served his sentence. We would ask this court to dismiss this case and leave the district court's judgment in place. Are there any further questions? Okay. Thank you. Thank you. Mr. Mr. Kirsch, we'll give you 2 minutes for rebuttal. Going back to the United States versus Lemon, which is cited in our brief. This court and Lemon is still good law. This court and it's already been referenced by this panel. But this court first specifically said that a sentence based any degree on activities or beliefs protected by the First Amendment is constitutionally invalid. And we would submit that that is why this case should not be dismissed. And that is why this case really falls within Mr. Packer statutory right to appeal, regardless of the fact that he said he wasn't going to appeal. But that was that that acceptance was made before we knew that there was going to be an illegal sentence imposed. And then the government argues and again. This court has to make the final determination, but the government continues to argument that there's no connection between. Excuse me. The government argues there is a connection between the T-shirt and the crime. It's not correct. Sorry. It clearly is that I can see from the record any connection between crime and the T-shirt. There's no reference. There's nothing. There are no remarks on Mr. Packer. There's nothing from which this court can infer there's a connection. But Judge Nichols didn't make that inference. He said, I have to infer this is the nefarious intent. We submit that was improper. So for all those reasons, we would submit that this case that Mr. Packer did not waive cases, not move. And that is First Amendment rights. Thank you. Thank you, counsel. Thank you to both counsel. This case under submission, Mr. Kirsch, you were appointed by the court to assist the appellant in this matter. And the court thanks you for your assistance.
judges: Srinivasan, Millett, Childs